■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARVIN K. BARBER, Appellant. [703 NYS2d 328] —Judgment reversed on the law and new trial granted. Memorandum: Defendant appeals from a judgment convicting him of, *inter alia,* murder in the second degree (Penal Law § 125.25 [1]) and conspiracy in the second degree (Penal Law § 105.15) in connection with the death of Calvin Crippin. Crippin was killed by defendant during a meeting that took place in the downstairs flat at 289 Hazlewood Street in the City of Buffalo. The downstairs flat was operated as a day care center by defendant's girlfriend. Defendant and his family resided in the upstairs flat. Contrary to defendant's contention, Supreme Court properly determined that the day care center was not defendant's dwelling (*see,* Penal Law § 140.00 [3]). The court therefore properly refused to charge the jury that defendant had no duty to retreat from Crippin (*see,* Penal Law § 35.15 [2] [a] [i]; *People v Berk,* 88 NY2d 257, 266-267, *cert denied* 519 US 859; *see also, People v Curry,* 233 AD2d 879, 880, *lv denied* 89 NY2d 1010). In any event, the evidence is undisputed that Crippin was lying face down with gunshot wounds to the leg and chest when defendant shot him at close range in the back of the head. Therefore, because defendant was able to retreat with complete safety from any risk that may have been posed by Crippin, there was no basis for a jury instruction that defendant was justified in the use of deadly physical force (*see,* Penal Law § 35.15 [2] [a]).

At the time of the murder, defendant was the target of an investigation by the New York State Police with respect to drug sales in Lackawanna. Prior to the murder, the police obtained an eavesdropping warrant for the telephone line at 17 Church Street. The eavesdropping warrant was amended to include information regarding the murder. Based upon intercepted conversations of defendant and his cousin, Ronald Evans, the police obtained search warrants for 289 Hazlewood Street and 17 Church Street. Defendant was arrested at 17 Church Street when the warrant was executed, and he

provided a statement to the police in which he admitted killing Crippin. Contrary to the contention of defendant, the evidence obtained when the search warrants were executed is not fruit of the poisonous tree because the eavesdropping warrant was properly granted. The application, which explained that normal investigative procedures were unlikely to succeed and were dangerous, properly demonstrated the necessity for the warrant (*see, People v Fonville,* 247 AD2d 115, 118-119). According to the application, although a confidential informant made drug buys, he was unable to obtain information regarding the sales network that defendant operated by telephone; defendant refused to deal with any person that he did not know, and thus the police were unable to infiltrate the organization any further; and defendant had advised the confidential informant that he would use his weapon against the police. Defendant's contention that the police misrepresented the facts when obtaining the warrant is not preserved for our review, and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see,* CPL 470.15 [6] [a]).

Because defendant lacks standing to assert the violation of another person's right against unlawful search and seizure (*see, People v Edelstein,* 54 NY2d 306, 309, *rearg denied* 55 NY2d 878), the court properly denied defendant's suppression motion without conducting a hearing to determine whether police properly minimized the interception of conversations of third parties. Furthermore, defendant failed to demonstrate that he had a property interest in the premises at 17 Church Street (*see, People v Contento,* 146 AD2d 959, 960).

The court did not abuse its discretion in refusing to permit defendant to introduce extrinsic evidence that Evans provided unsworn statements to the police that contradicted his trial testimony. It was within the sound discretion of the court to determine that the issue of Evans' credibility was collateral to the ultimate issue before the jury (*see, People v Duncan,* 46 NY2d 74, 80, *rearg denied* 46 NY2d 940, *cert denied* 442 US 910, *rearg dismissed* 56 NY2d 646).

In his motion to dismiss, defendant did not state with specificity that the prosecution failed to prove that defendant and Evans agreed to kill Crippin (*see, People v Gray,* 86 NY2d 10, 19; *People v Kostora,* 251 AD2d 1082, *lv denied* 92 NY2d 1034). Therefore, defendant's contention concerning the legal sufficiency of the evidence with respect to conspiracy in the second degree is not preserved for our review, and we decline to exercise our power to review it as a matter of discretion in

the interest of justice (*see,* CPL 470.15 [6] [a]). The verdict with respect to conspiracy in the second degree is not against the weight of the evidence (*see, People v Bleakley,* 69 NY2d 490, 495).

We agree with the contention of defendant that the court erred in failing to grant his challenge for cause to a prospective juror. Defendant used a peremptory challenge to excuse the prospective juror, and his peremptory challenges were exhausted prior to the conclusion of jury selection. Thus, defendant may assert on appeal that the denial of his challenge for cause constitutes reversible error (*see,* CPL 270.20 [2]; *People v Torpey,* 63 NY2d 361, 365, *rearg denied* 64 NY2d 885). Where an issue is raised concerning the ability of a prospective juror to be fair and impartial, the prospective juror must state unequivocally that the prior state of mind of the juror will not influence his or her verdict and that the juror will render an impartial verdict based solely on the evidence (*see, People v Blyden,* 55 NY2d 73, 77-78; *People v Biondo,* 41 NY2d 483, 485, *cert denied* 434 US 928; *People v Thorn,* 269 AD2d 756 [decided herewith]). "[I]n determining whether a prospective juror has made unequivocal declarations, it is necessary to look at [the juror's] entire testimony; that the prospective juror once made the 'proper' declarations does not necessarily mean that [the juror] has 'purged' the bias" (*People v Torpey, supra,* at 368, citing *People v Blyden, supra,* at 77-78, and *People v McQuade,* 110 NY 284, 301; *see also, People v Jackson,* 265 AD2d 342). A court should grant a challenge for cause where, after considering the juror's entire response, there is any doubt that the juror's state of mind will affect the ability of the juror to discharge his or her responsibilities (*see, People v Blyden, supra,* at 78; *People v Jackson, supra; People v Zachary,* 260 AD2d 514).

In the present case, the prospective juror advised the court that he assumed a person who was arrested and brought to court was guilty. The court explained the presumption of innocence and the People's burden of proof. When asked if he would follow the court's instructions, the prospective juror replied "yes." However, upon subsequent questioning by defense counsel, the prospective juror acknowledged that his presumption of guilt was a strong belief that would "probably" not be dispelled. We conclude that the statements of the prospective juror to defense counsel rendered equivocal his earlier declaration regarding his ability to be impartial. The comments of the prospective juror taken as a whole demonstrate that his predisposition regarding defendant's guilt would affect

his ability to discharge his responsibilities as a juror. We must therefore reverse the judgment and grant a new trial (*see, People v Blyden, supra,* at 77-78; *People v Thorn, supra*). In view of our determination, we do not address defendant's remaining contention concerning the severity of the sentence.

All concur except Scudder, J., who dissents and votes to affirm in the following Memorandum.

Scudder, J. (dissenting). I respectfully dissent and would affirm. I disagree that Supreme Court erred in refusing to discharge a prospective juror for cause. Although the prospective juror articulated his belief that one who has been indicted is guilty of committing a crime, it does not mean that he would not or could not put that general belief aside in order to consider the evidence fairly with respect to a particular defendant. "[T]he mere existence of any preconceived notion as to guilt or innocence is insufficient to rebut the presumption of impartiality" (*People v Butts,* 140 AD2d 739, 740). The prospective juror in this case clearly indicated to the court that he would consider the evidence against defendant fairly and would follow the court's instructions with respect to the presumption of innocence and the standard of proof that a guilty verdict must be based on proof of guilt beyond a reasonable doubt (*cf., People v Burdo,* 256 AD2d 737, 740-741; *People v Brzezicki,* 249 AD2d 917, 918-919). "Where a prospective juror has expressed bias or preconceived opinions but subsequently articulates the ability to put aside such feelings or opinions, and to render an impartial verdict based upon the evidence, the trial court may properly deny a challenge for cause" (*People v Burdo, supra,* at 741; *see also, People v Willard,* 226 AD2d 1014, 1017-1018, *lv dismissed* 88 NY2d 943). I disagree with the majority that the responses of the prospective juror to questions posed by defense counsel "rendered equivocal his earlier declaration regarding his ability to be impartial." Although it would have been preferable for the court to follow up on defense counsel's questions, the record supports the court's determination that the general beliefs of the prospective juror would not prevent him from rendering an impartial verdict based solely on the evidence (*see, People v Blyden,* 55 NY2d 73, 77-78). (Appeal from Judgment of Supreme Court, Erie County, Tills, J.— Murder, 2nd Degree.) Present—Pine, J. P., Hurlbutt, Scudder and Lawton, JJ.