*773 OPINION OF THE COURT
Joseph D. Valentino, J.
Defendant stands accused of two counts of murder in the first degree (Penal Law § 125.27 [1] [a] [viii], [b]) and one count of assault in the first degree (Penal Law § 120.10 [1]). Defendant moved to preclude the admission of DNA evidence from Karelin, Halle, Tyler, and Elizabeth Zacher, asserting that DNA samples from these individuals were obtained without consent. Defendant relies primarily on Public Health Law § 2504 and Social Services Law § 383-b.
The People oppose defendant’s motion and contend that defendant lacks standing, the DNA testing did not require defendant’s consent, and that none of the statutes relied upon by defendant requires preclusion of the DNA evidence. The People also assert that the evidentiary foundation for admission of this DNA testing is not dependent upon the manner in which consent was obtained.
Discussion
At trial, all relevant evidence is generally admissible unless its admission violates an exclusionary rule (People v Scarola, 71 NY2d 769, 777 [1988]). Many of the exclusionary rules are based on determinations of the reliability of the evidence. Defendant moves to preclude the admission of the DNA test results by asserting that the DNA samples were obtained without proper consent. The essence of defendant’s argument is an assertion of Fourth Amendment rights on behalf of other individuals.
“Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted” (Alderman v United States, 394 US 165, 174 [1969]; see generally, Tenenbaum v Williams, 193 F3d 581, 602 n 13 [2d Cir 1999], cert denied sub nom. City of New York v Tenenbaum, 529 US 1098 [2000] [District Court held that parents did not have standing to bring a Fourth Amendment claim in their own behalf with respect to the State’s treatment of their daughter]). A defendant is not aggrieved by an illegal search and seizure of another person and thus that defendant does not have standing to challenge the search or seizure of such other person (People v Edelstein, 54 NY2d 306 [1981]; People v Barber, 269 AD2d 758 [2000]; People v Rodriguez, 58 AD2d 612 [1977]).
Defendant attempts to contest the search and seizure of DNA from these individuals, which he has no standing to do {see, *774 People v Edelstein, supra; People v Barber, supra; People v Rodriguez, supra).
In any event, Public Health Law § 2504 (1) provides: “Any person who is eighteen years of age or older, or is the parent of a child or has married, may give effective consent for medical, dental, health and hospital services for himself or herself, and the consent of no other person shall be necessary.” (Emphasis supplied.)
The statute is permissive and does not indicate that consent is a requirement. The statute does not define medical, health and hospital services, but those terms are defined in other statutes.
“Medical service” has been defined as “such diagnostic, therapeutic, and rehabilitative care by medical and paramedical personnel, including hospital and related care, and drugs, prostheses, appliances, equipment and devices as necessary” (Public Health Law § 2581 [2]; see also, 10 NYCRR 46.1; Barrett v Lubin, 188 AD2d 40, 42 [4th Dept 1993]).
In the New York City Health and Hospitals Corporation Act, “[h]ealth and medical services” means
“items or services provided by or under the supervision of a physician or other person trained or licensed to render health care necessary for the prevention, care, diagnosis or treatment of human disease, pain, injury, deformity or other physical or mental condition including, but not limited to, preadmission, out-patient, in-patient and post-discharge care, home care, physicians’ care, nursing care, medical care provided by interns or residents-in-training and other para-medical care, ambulance service, bed and board, drugs, biologicals, supplies, appliances, equipment, laboratory services and x-ray, radium and radio-active-isotope therapy” (McKinney’s Uncons Laws of NY § 7383 [13] [L 1969, ch 1016, sec 1, § 3, as amended]).
Public Health Law § 2801 (4) (a) defines “[h]ospital service” as
“the preadmission, out-patient, in-patient and post discharge care provided in or by a hospital, and such other items or services as are necessary for such care, which are provided by or under the supervision of a physician for the purpose of prevention, diagnosis or treatment of human disease, pain, injury, disability, deformity or physical condition, including, *775 but not limited to, nursing service, home-care nursing and other paramedical service, ambulance service, service provided by an intern or resident in training, laboratory service, medical social service, drugs, biologicals, supplies, appliances, equipment, bed and board.”
Given the definitions as set forth above, it does not appear that medical, hospital or health services were involved with obtaining DNA samples from Karelin, Halle, and Tyler. DNA samples were obtained from Karelin and Halle when their autopsies were performed in connection with the criminal investigation of a homicide, as defined in section 125.00 of the Penal Law, of which they were the victims. Even if defendant had objected to the autopsies, Public Health Law § 4210-c (2) (a) (i) would have permitted the autopsies due to the homicide investigation. It cannot be argued that the autopsies or DNA recovery from Karelin and Halle were performed as a medical or health service because the procedure was not for diagnostic, therapeutic, and rehabilitative care. The taking of Tyler’s DNA sample by a Niagara County Sheriffs Deputy was not part of a medical, health, or hospital service.
Regarding the sample of DNA from Elizabeth, Sergeant Brian Ball testified that on April 11, 2005 he obtained a DNA sample from Elizabeth at the hospital. Three swabs were used and placed in a DNA kit box which was then sealed. Although the collection occurred while Elizabeth was in the hospital, the taking of her DNA sample was not part of a medical, health, or hospital service.
Consequently, the court concludes that Public Health Law § 2504 (1) is inapplicable to the taking of DNA samples from Karelin, Halle, Tyler, and Elizabeth.
Regarding Social Services Law § 383-b, it provides:
“The local commissioner of social services or the local commissioner of health may give effective consent for medical, dental, health and hospital services for any child who has been found by the family court to be an abused child or a neglected child, or who has been taken into or kept in protective custody or removed from the place where he is residing, or who has been placed in the custody of such commissioner, pursuant to section four hundred seventeen of this chapter or section one thousand twenty-two, section one thousand twenty-four or section one thousand twenty-seven of the family *776 court act.” (Emphasis supplied.)
As set forth above, even if defendant had standing, the court has concluded that medical, health and hospital services were not involved in obtaining the DNA samples. As such, Social Services Law § 383-b does not entitle defendant to preclusion of the DNA evidence.
Regarding the other statutes cited by defendant — Family Court Act §§ 418 and 532, CPLR 4518, and Social Services Law § 111-k — all relate to DNA to establish paternity, which is not the issue here. Therefore, those statutes are inapplicable.
Decision
Accordingly, defendant’s motion to preclude DNA evidence is denied.